September 6, 1978

## 78-50 MEMORANDUM OPINION FOR THE COUNSEL TO THE PRESIDENT

### Freedom of Information Act (5 U.S.C. § 552)— National Security Council—Agency Status Under FOIA

You have asked whether the National Security Council (NSC) is an Agency for Freedom of Information Act, (FOIA) purposes. We conclude, in general, that it is. This opinion does not, however, address the questions (1) whether the National Security Council, although an Agency under FOIA for most purposes, might be considered not an Agency for other purposes,[1] or (2) which records held by the Council are Agency records within the meaning of the Act.[2]

### I. The Freedom of Information Act

The Freedom of Information Act, 5 U.S.C. § 552 (1976), places certain duties, responsibilities, and obligations relating to public access to Government information on "each agency" of the Government of the United States. For the purpose of the Act

> . . . the term "agency" as defined in section 551(1) [of 5 U.S.C.] . . . includes any executive department, military department, Government corporation, Government-controlled corporation, or other establishment in the executive branch of the Government

---

[1] *Cf., Renegotiation Board* v. *Grumman Aircraft Engineering Corp.*, 421 U.S. 168, 188 n. 25 (1975). In that case the Supreme Court suggested that a Regional Renegotiation Board might be an "agency" in some of its work and not an "agency" in the rest of its work.

[2] It follows from the conclusion that NSC is an Agency for FOIA purposes that records belonging to NSC are Agency records under FOIA, but NSC may hold records that belong to persons or entities that are not Agencies for FOIA purposes. In this connection, it is pertinent to note that the NSC staff views itself as not only performing the functions prescribed in the National Security Act of 1947, 61 Stat. 495, but also serving as "the supporting staff to the President in the conduct of foreign affairs," 40 F.R. 47746 (1975); 32 CFR § 2102.1(b)(1976), and thus, as "an extension of the White House Office."

(including the Executive Office of the President), or any independent regulatory agency. 5 U.S.C. § 552(e).[3]

According to the definition of § 552(e), the term "agency," for FOIA purposes, includes establishments in the Executive Office of the President. The National Security Council (NSC) is an establishment,[4] and it is within the Executive Office of the President.[5] Thus, NSC is within the plain language of the above definition and were it not for the legislative history of the 1974 amendments it would have to be considered an Agency for FOIA purposes.

The Senate version of the 1974 amendments expanded the APA definition of "agency" only by adding to it the U.S. Postal Service, the Postal Rate Commission, and "any other authority of the Government of the United States which is a corporation and which receives any appropriated funds." The Senate report explained this expanded definition of "agency" as follows:

> Section 3 expands on the definition of agency as provided in section 551(1) of title 5. That section defines "agency" as "each authority (whether or not within or subject to review by another agency) of the Government of the United States other than Congress, the courts, or the governments of the possessions, territories, or the District of Columbia." This definition has been broadly interpreted by the courts as including "any administrative unit with substantial independent authority in the exercise of specific functions," which in one case was held to include the Office of Science and Technology. *Soucie* v. *David*, 448 F. (2d) 1067, 1073 (1971).

> Nonetheless, the U.S. Postal Service has taken the position that without specific inclusionary language, amendments to the FOIA "would not apply to the Postal Service." (*Hearings,* vol. II at 323.) To assure FOIA application to the Postal Service and also to include publicly funded corporations established under the authority of the United States, like the National Railroad Passenger Corporation (45 U.S.C. § 541), section 3 incorporates an expanded definition of

---

[3]This definition was added by the Freedom of Information Act Amendments of 1974, Pub. L. No. 93-502 § 3, 88 Stat. 1564. Prior to this amendment the FOIA definition of "agency" was exclusively that of the Administrative Procedure Act (APA), 5 U.S.C. § 551(1). In relevant part § 551(1) defines "agency" as

> . . . each authority of the Government of the United States, whether or not it is within or subject to review by another agency.

The amended definition has been incorporated into the Privacy Act of 1974, 5 U.S.C. § 552a(a)(1) and the Government in the Sunshine Act, 5 U.S.C. § 552b(a)(1).

[4]The term "establishment" is not defined in § 552(e) or elsewhere in the FOIA or APA. However, the NSC must be considered an establishment because of its 99-member staff. (Of these, 69 are permanent employees of the NSC; 30 are detailed from other agencies.) The NSC and its staff are easily identifiable as a body separate from other entities within the Executive Office of the President. Money is appropriated for it and it "owns" its furniture, fixtures, and supplies. It pays its employees, keeps their administrative records, and handles its personnel matters. In short, it has a clear, independent administrative status.

[5]The NSC was created by the National Security Act of 1947, 61 Stat. 495. It was transferred to the Executive Office of the President by Reorganization Plan No. 4 of 1949, 5 U.S.C. App., 14 F. R. 5227, 63 Stat. 1067.

198

agency to apply under the FOIA. [S. Rept. No. 93-854, 93d Cong., 2d sess. 33 (1974).]

The House version of the amendments also contained an expanded definition of the term "agency." This definition was broader and more explicit than the Senate's version and it prevailed in conference to become, with slight modification, 5 U.S.C. § 552(e). Its language relating to establishments within the Executive Office of the President was identical to that agreed upon in conference. The House report explains the meaning of that language by citing examples of "functional entities" included within it:

> The term "establishment in the Executive Office of the President," as used in this amendment, means such functional entities as the Office of Telecommunications Policy, the Office of Management and Budget, the Council of Economic Advisers, *the National Security Council*, the Federal Property Council, and other similar establishments which have been or may in the future be created by Congress through statute or by Executive order. [H. Rept. No. 93-876, 93d Cong., 2d sess. 8 (1974)] [Emphasis added.]

Speaking in more general terms the House report notes that the definition of "agency" was expanded

> . . . to include those entities which might not be considered agencies under Section 551(1) of title 5, U.S. Code, but which perform governmental functions and control information of interest to the public. [*Id.*]

The conference report, after explaining the differences between the Senate and House versions of the expanded definition of "agency," notes that *"The conference substitute follows the House bill."* H. Rept. No. 93-1200, 93d Cong., 2d sess. 14 (1974). [Emphasis added.] That report states that by the definition the conferees ". . . intend[ed] to include within the definition of 'agency' those entities encompassed by 5 U.S.C. § 551 and other entities including. . . ."[6] *Id.* The report reveals that "expansion of the definition of 'agency' in this subsection is intended to broaden applicability of the Freedom of Information Act. . . ." *Id.*, at 15. In addition, the conference report deals specifically with the meaning of "Executive Office of the President." It states:

> With respect to the meaning of the term "Executive Office of the President" the conferees intend the result reached in *Soucie* v. *David*, 448 F. (2d) 1067 (C.A.D.C. 1971). The term is not to be interpreted as including the President's immediate personal staff or units in the Executive Office whose sole function is to advise and assist the President. [*Id.*]

A summary of the 1974 amendments and their history relating to the question whether Congress intended the NSC to be included in the FOIA definition of

---

[6]The list following "including" does not include the NSC, or any other unit in Executive Office of the President. Two entities are included by name. These are the United States Postal Service and the Postal Rate Commission, both of which were included by express language in the Senate version.

"agency" is as follows: (1) The language of the law is broad enough to be viewed as an expression of congressional intent that all establishments within the Executive Office of the President, including the NSC, be treated as Agencies for FOIA purposes [7] (2) The Senate report (and the Senate version of the legislation) continued to cover all Government entities included in the APA definition as interpreted by the courts. The black letter rule, as expressed in the Senate report, is that "any administrative unit with the substantial independent authority in the exercise of specific functions" should be viewed as an Agency under the FOIA. This language was explicitly linked to *Soucie* v. *David*, 448 F. (2d) 1067 (D.C. Cir. 1971), involving a unit within the Executive Office of the President. (3) The House report shows an unequivocal intention to include NSC in the FOIA definition of Agency. (4) The conference report, while stating generally that the intent of Congress in redefining "agency" was to expand the definition in order to broaden the applicability of the FOIA, declares that the conference bill follows the House version and expresses the specific intent that, with respect to the Executive Office of the President, entities within the "result reached" in *Soucie* v. *David* be included, but that those constituting the President's personal staff or "whose sole function is to advise and assist the President" be excluded.

Thus, both the language of the Act and its explanation contained in the House report include, by literal application, the NSC as an Agency subject to the FOIA. The conference report, which states that the conferees followed the House version of the legislation, expresses the intent (as did the Senate report with respect to the term "agency" as used in the APA) that—at least for entities in the Executive Office of the President—a functional approach be adopted. That is, an establishment within the Executive Office should not automatically be classified an Agency (nor automatically excluded), but should be treated as such only if it has the authority to function at least in part as an Agency.

There is a very substantial risk that the NSC would be held to be an Agency on the basis of the unambiguous language of the Act and the House Report. Under conventional standards of statutory interpretation a court would be justified in so holding on these grounds alone. We believe, nevertheless, that to determine whether the NSC is included within the FOIA definition we must apply the conference report's test and examine whether the NSC is invested with "substantial independent authority in the exercise of specific functions."[8] If it is either the President's staff or a unit whose *sole* function is to advise and

---

[7]Although it is honored primarily in the breach, "the plain meaning rule" of statutory construction in which legislative history is ignored still has some vitality. *See, Ernst & Ernst* v. *Hochfelder*, 425 U.S. 185, 201 (1976). Its application becomes more likely when the legislative history is more ambiguous than the statutory language being construed.

[8]We view the reference to the "result reached" in *Soucie* v. *David* as a reference to the interpretation of that case in the Senate report. That is, entities within the Executive Office of the President may be treated as Agencies for FOIA purposes if they have "substantial independent authority in the exercise of specific functions." An entity would not have substantial independent authority if it were either the President's staff or a unit whose sole function is to advise and assist the President.

assist[9] the President, it should not be viewed as having substantial independent authority.

## II. The National Security Council

The National Security Council was created by the National Security Act of 1947, and together with its functions, records, property, personnel, and unexpended appropriations, allocations and other funds available or to be made available, was transferred to the Executive Office of the President by Reorganization Plan No. 4 of 1949, 5 U.S.C. App., 14 F. R. 5227, 63 Stat. 1067. As presently constituted, the statutory body consists of the President, the Vice President, and the Secretaries of State and Defense. It has a staff of 99 (69 permanent employees, 30 detailed from other departments) which, at present, is headed by a staff secretary.[10]

According to its statutory mandate

> [t]he function of the Council shall be to advise the President with respect to the integration of domestic, foreign, and military policies relating to the national security so as to enable the military services and the other departments and agencies of the Government to cooperate more effectively in matters involving national security. [50 U.S.C. § 402(a)]

The National Security Act also assigned to the NSC, under the heading "additional functions, " the following duties:

> In addition to performing such other functions as the President may direct, for the purpose of more effectively coordinating the policies and functions of the departments and agencies of the Government relating to the national security, it shall, subject to the direction of the President, be the duty of the Council—
>
> (1) to assess and appraise the objectives, commitments, and risks of the United States in relation to our actual and potential military power, in the interest of national security, for the purpose of making recommendations to the President in connection therewith; and
>
> (2) to consider policies on matters of common interest to the departments and agencies of the Government concerned with the

---

[9]Within the context of the legislative history, which clearly expresses a general intent to expand the coverage of FOIA, "assist" must be read narrowly. We do not believe that units within the Executive Office can be viewed as "assisting" the President, in the same sense that the word "assist" is used in the conference report, when they perform substantive governmental functions, even if the purpose of their authority to perform such functions is to enable them to fulfill a primary role of assisting (or advising) the President. To conclude otherwise would make a dead letter of inclusion of establishments within the Executive Office of the President within the definition of an Agency for FOIA purposes, because the function of all the units within the Executive Office, and those of the Office itself is, in a broad sense, to assist the President.

[10]Section 402(c) of 50 U.S.C. directed that the NSC staff be headed by a Presidentially appointed Executive Secretary. This position, which in past administrations has often been filled by the President's Assistant for National Security Affairs, is presently vacant. As a practical matter, however, under current operating procedures the NSC staff works for the President's Assistant for National Security Affairs, in fact, if not in form.

national security, and to make recommendations to the President in connection therewith. [50 U.S.C. § 402(b)]

The Council is further authorized to ". . . from time to time, make such recommendations and such other reports to the President as it deems appropriate or as the President may require." 50 U.S.C. § 402(d).

The House report on the National Security Act comments that "[t]his Council [the NSC] . . . gives us for the first time in our history a means for bringing together the responsible heads of Government charged with recommending and carrying out our foreign policies after making a careful appraisal of our domestic and military potentials." H. Rept. No. 961, 80th Cong., 1st sess. 3 (1947). The Senate report characterizes the Council as "[e]ssentially . . . an advisory body to the President with respect to the integration of domestic, foreign, and military policies, so as to enable the military services and other departments and agencies of the Government to cooperate more effectively in matters involving the national security." S. Rept. No. 239, 80th Cong., 1st sess. 10 (1947). The Senate committee that reported favorably on Reorganization Plan No. 4 of 1949 stated flatly that "[i]t [NSC] is an advisory body to the President and not one of the various agencies within the National Military Establishment." S. Rept. No. 838, 81st Cong., 1st sess. 2 (1949). It also noted that "[t]he President as chairman controls NSC business . . . " *id.*, and that NSC and the National Security Resources Board (NSRB) "were made advisory agencies to the President by the National Security Act of 1947."

It is clear from the statutorily prescribed functions of the NSC, from the legislative history of the Act which created it, and from nearly contemporaneous congressional commentary·that the Council's intended function is to be primarily an advisory body to the President that would help him or her to plan the effective and efficient unitary utilization of those various Departments and Agencies of the Government that have responsibilities for the Nation's security. The question is, however, whether NSC is vested with substantial independent authority in the exercise of specific functions or whether its *sole* function is to advise and assist the President.

In addition to the establishment of the NSC, the National Security Act of 1947 created the Central Intelligence Agency (CIA). That Agency was "established under the National Security Council," 50 U.S.C. § 403(a), and is given certain duties "under the direction of the National Security Council," 50 U.S.C. § 403(d), including the duty "to perform such other functions and duties related to intelligence affecting the national security as the National Security Council may from time to time direct." 50 U.S.C. § 403(d)(5).

The legislative history of the Act indicates that Congress intended the National Security Council to be the supervisory authority over the Central Intelligence Agency, by establishing the CIA "under" the NSC and making it subject to the Council's "direction."

According to the Senate report:

The Central Intelligence Agency provided for by Section 102 exists now as the Central Intelligence Group. *The bill establishes the*

*agency under the National Security Council and assigns to that Council the supervisory authority and responsibility now exercised by the National Intelligence Authority* created by Executive Order of the President and composed of the Secretaries of State, War, and Navy. [S. Rept. No. 239, *supra,* at 10] [Emphasis added.]

The Executive order referred to in the Senate report was actually a Presidential directive. It provided, in pertinent part:

To the Secretary of State, the Secretary of War, and the Secretary of the Navy.

1. It is my desire, and I hereby direct, that all Federal foreign intelligence activities be planned, developed and coordinated so as to assure the most effective accomplishment of the intelligence mission related to the national security. *I hereby designate you,* together with another person to be named by me as my personal representative, *as the National Intelligence Authority to accomplish this purpose.*

2. Within the limits of available appropriations, you shall each from time to time assign persons and facilities from your respective Departments, which person shall collectively form a *Central Intelligence Group and shall, under the direction of a Director of Central Intelligence, assist the National Intelligence Authority.* The Director of Central Intelligence shall be designated by me, shall be responsible to the National Intelligence Authority, and shall sit as a nonvoting member thereof.

3. *Subject to the existing law, and to the direction and control of the National Intelligence Authority, the Director of Central Intelligence shall:* . . . .[Presidential directive of January 22, 1946, 3 CFR 1080 (1943-1948 compilation)] [Emphasis added.]

In addition, the Senate report on Reorganization Plan No. 4 of 1949, while stating that NSC "is an advisory body to the President," recognized that "[i]t also directs the Central Intelligence Agency which coordinates intelligence activities." S. Rept. No. 838, *supra,* at 2, 4.

The National Security Council, which is an administrative unit[11] and is an establishment within the Executive Office of the President, has explicit statutory authority to supervise and direct the Central Intelligence Agency. We believe that NSC's legal authority over the CIA constitutes substantial independent authority in the exercise of at least one (very important) specific function. Therefore, NSC is not a unit whose sole function is to advise or assist the President.

We have considered the possibility that NSC should be viewed as advisory only because the President, as a member, controls its actions and decisions. The argument runs that in all cases Council's action must be viewed as Presidential action since the President will inevitably dominate in Council affairs. Thus, Council participation in national security matters is, at most, hortatory and not substantive. This argument fails for two reasons.

---

[11]*See* footnote 4, *supra.*

The National Security Council was created by Congress as an entity distinct from the Presidency. It was transferred, still as a distinct entity, along with all of its functions to the Executive Office of the President by Executive Order No. 12036. As a legal matter, then, the independent authority which it possesses, it possesses as the National Security Council. To the extent that the Council's authority is exercised by the President,[12] it may reasonably be viewed as exercised by him in his capacity as Chairman of the NSC.[13]

Even if it were sound to say that NSC is capable of assuming an advisory role only (because of the President's statutory membership), the Council would not escape Agency status for FOIA purposes. From administration to administration, Presidents, invoking the authority granted them by 50 U.S.C. § 402(b) to assign to the NSC "such other functions as the President may direct," have themselves vested NSC committees on which they have retained membership, with legal authority to perform specific, substantive functions. Current examples are the two NSC committees created by PD/NSC-2, the Policy Review Committee (PRC) and the Special Coordination Committee (SCC), both of which are empowered by Executive order to perform important, substantive, and far-reaching governmental functions relating to intelligence matters and both of which are legally permitted to act without Presidential participation. *See* Executive Order No. 12036 §§ 1-2 (PRC) and 1-3 (SCC), 43 F.R. 3674, 3675 (1978). The existence of such delegated power[14] in these committees (and other similar NSC committees which existed in prior administrations, such as the 303 and 40 committees, the Committee on Foreign Intelligence (CFI), and the Operations Advisory Group (OAG), *see* Executive Order No. 11905 §§ 3b (CFI) and 3(c) (OAG), 41 F. R. 7703, 7707-7709 (1976)), prevent the NSC from being viewed as solely advisory and without legal authority to exercise specific governmental functions.

Important, too, is the common understanding that the NSC is a body having functions, power, and authority of its own and is not simply an *alter ego* of the President. This understanding was expressed by the President himself in his statement accompanying the promulgation of Executive Order No. 12036. He said:

> The National Security Council and its two standing Committees—the Special Coordination Committee (SCC) and the Policy Review Committee (PRC)—will, *short of the President,* provide the highest level of review and guidance for the policies and practices of the Intelligence Community. [14 Weekly Comp. of Pres. Doc. 214 (Jan. 30, 1978)] [Emphasis added.]

---

[12]NSC is subservient to the President as are all executive departments and agencies. This, however, does not mean that it, or they, are without independent authority.

[13]Under current practice Presidential decisions on national security matters are promulgated by directives in a series entitled "Presidential Directive (PD)/NSC." *See* PD/NSC-1.

[14]The fact that a Government entity exercises only delegated powers does not prevent it from being treated as an Agency for FOIA purposes. *Grumman Aircraft Engineering Corp.* v. *Renegotiation Board,* 482 F. (2d) 710 (D.C. Cir. 1973), *rev'd. on other grounds,* 421 U.S. 168 (1975).

We conclude that there is a substantial risk that NSC could be held to be an Agency by a simple, literal application of the language of 5 U.S.C. § 552(c). In our opinion, the better approach is to examine whether NSC is within the exception from inclusion stated in the conference report. This requires examining whether NSC has substantial independent authority in the exercise of specific functions or whether it is simply an establishment in the Executive Office of the President whose sole function is to advise and assist the President. Since NSC is given statutory authority to supervise and direct the CIA and because of the NSC functions provided in Executive Order No. 12036, we conclude that it has independent legal authority to exercise specific functions and that, as a legal matter, it cannot be viewed as existing solely to advise and assist the President. It is not, therefore, within the exception of the conference report, and, being an establishment in the Executive Office of the President not within that exception, is an Agency for FOIA purposes.[15]

JOHN M. HARMON
*Assistant Attorney General*
*Office of Legal Counsel*

---

[15]There is not a great deal of equity in the position that NSC is not an Agency for FOIA purposes. NSC, although reserving the question of the applicability to it of FOIA, has staff members assigned to process FOIA requests in accordance with its published FOIA guidelines. *See* 40 F. R. 7316 (1975), 32 CFR § 2101 (1976). Further, due to the nature of the work of the NSC and its staff it is clear that valid exemptions are available for the vast bulk of the material which constitutes NSC records. Yet, there may be records in the possession of the NSC staff which are not sensitive or advisory in nature and which may be of interest to the public, such as some fiscal records.

We have also considered whether NSC could raise a valid constitutional claim to general immunity from the FOIA, and we believe this possibility is very weak. Certain records of the NSC could, if necessary, be protected by a claim of executive privilege, but such a claim could not successfully be invoked to preclude Congress from opening to public view some NSC administrative records and other nonsensitive records to which the claim could not reasonably attach. Nor could it be shown on evidence now available that the Act's impact on NSC is so onerous that its ability to function in support of the President will be impaired.